Ellis **BAKER, Roger Durkin, Albert D. Hamblin, James Hull, Michael Kinnarney, Robert J. Kiliander, James Rafferty, Sr., Patrick Rafferty, Joseph Ross, Roger E. Petoff, James A. Porter, and Herbert R. Helms, Donald N. Bird, James R. Payne, Thomas J. Helms, Plaintiffs,**

v.

**DEPARTMENT OF ENVIRONMENTAL CONSERVATION OF the STATE OF NEW YORK, Defendant.**

**Adirondack Council, Sierra Club, Wilderness Society, American Wilderness Alliance, and Peaks Audubon Society, Intervenor-Defendants,**

**Adirondack Mountain Club, Intervenor-Defendant.**

**No. 85–CV–145.**

United States District Court, N.D. New York.

May 16, 1986.

Francis X. Wallace, Albany, N.Y., for plaintiffs; Nancy M. Maurer, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., for defendant; Lawrence A. Rappoport, Associate Atty., of counsel.

Howard Fox, Sierra Club Legal Defense Fund, Washington, D.C., Peter Henner, Albany, N.Y., for Adirondack Council, et al.

Rosemary Nichols, Albany, N.Y., Sive, Pale & Riesel, New York City, for Adirondack Mountain Club; David Sive, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

The plaintiffs have brought this action challenging title 6, section 196.4 of the Code, Rules and Regulations of the State of New York. N.Y.Admin.Code tit. 6, § 196.4 (1982). The challenged regulation prohibits the use of mechanically propelled vessels and aircraft on certain state-owned bodies of water located within the Adirondack State Park. The Adirondack Park contains a mixture of public and private lands interspersed in a "checkerboard" pattern of ownership. New York State owns about 2.3 million acres, and private parties own about 3.7 million acres. *See* Adirondack Park Agency, *Adirondack Park State Land Master Plan*, October 1979, at

9, 10. The contested regulation governs the use of mechanized vessels and aircraft on bodies of water located in areas designated as "wilderness", "primitive" and "canoe." The first group of plaintiffs consists of handicapped individuals who allege that because they cannot gain access to these areas without the use of prohibited forms of transportation, the defendant New York Department of Environmental Conservation (DEC) has acted in contravention to their federal constitutional and statutory rights by adopting and implementing § 196.4. Specifically, the complaint alleges a violation of the Rehabilitation Act and alleges a civil rights action pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection and Due Process Clauses of the U.S. Constitution. Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794 (1985); U.S. Const. amend. XIV.[1] Individuals engaged in the business of transporting trappers and fishermen into the Adirondack Park comprise the second group of plaintiffs. They contend that § 196.4 was improperly adopted under the State Environmental Conservation Law and that it violates their federal and state constitutional rights.

Currently before the court are defendant's and intervenor-defendants' motions for summary judgment and plaintiffs' motion to amend the complaint. The court will first consider the merits of the complaint as presently phrased.

### 1. *Eleventh Amendment*

The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Private citizens may not maintain an action in federal court against a State itself, or against a state agency, unless the State has waived its sovereign immunity, and this consent must be unequivocally expressed. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 907, 908, 79 L.Ed.2d 67 (1984). The complaint names the DEC as defendant even though it has not consented to suit in federal court.

The plaintiffs here seek prospective relief only and request a declaration that the DEC's adoption, amendment and implementation of § 196.4 has violated their constitutional and statutory rights.[2] The DEC is a Department of New York State which the state legislature created to implement the

---

1. The plaintiffs also have asserted violations of state constitutional and statutory law.

2. Section 196.4 was enacted by the DEC in accordance with the guidelines set forth in the 1972 Adirondack Park State Land Master Plan (the Plan). *See* Adirondack Park Agency, *Adirondack State Land Master Plan,* June 1972. The Adirondack Park Agency (the Agency) prepared the Plan pursuant to the mandate of § 807 of the Adirondack Park Agency Act. The Plan was approved by the governor in 1972. In 1973 the state legislature renumbered and amended § 807. The current version is embodied in § 816 which provides:

> 1. The department of environmental conservation is hereby authorized and directed to develop, in consultation with the agency, individual management plans for units of land classified in the master plan for management of state lands heretofore prepared by the agency in consultation and approved by the governor. Such management plans shall conform to the general guidelines and criteria set forth in the master plan. Until amended, the master plan for management of state lands and the individual management plans shall guide the development and management of state lands in the Adirondack park.
>
> 2. The master plan and the individual management plan shall be reviewed periodically and may be amended from time to time, and when so amended shall as amended henceforth guide the development and management of state lands in the Adirondack park. Amendments to the master plan shall be prepared by the agency, in consultation with the department of environmental conservation, and submitted after public hearing to the governor for his approval.
>
> 3. The agency and department are hereby authorized to develop rules and regulations necessary, convenient or desirable to effectuate the purposes of this section.

This amendment gave the Plan "the force of a legislative enactment." *Helms v. Reid,* 90 Misc.2d 583, 604, 394 N.Y.S.2d 987 (N.Y.Sup.Ct. 1977). Section 816.1 provides that the Plan "shall guide the ... management of state lands in the Adirondack park." Section 196.4 represents the DEC's effort to implement the directives of the Plan. It was promulgated initially in 1973, and amended in 1975, 1977, 1981, and 1982.

State's environmental policies. *See* N.Y. Envtl.Conserv.Law § 1–0101 (McKinney 1982). In particular, the legislature has authorized the DEC, together with the Adirondack Park Agency, to develop management plans for the Adirondack Park. N.Y. Exec.Law § 816.1 (McKinney 1982). The DEC performs an essential government function in managing state lands; consequently, in this action, the State itself is the real party in interest. *See Byram River v. Village of Port Chester*, 394 F.Supp. 618, 625 (S.D.N.Y.1975).

■ Although Congress has authority to overturn a State's immunity in enacting legislation designed to protect rights secured by the Fourteenth Amendment, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court has held that 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), *quoted in, Pennhurst*, 104 S.Ct. at 907; *see also Daisernia v. New York*, 582 F.Supp. 792 (N.D.N.Y.1984). Similarly, Congress' enactment of § 504 of the Rehabilitation Act has not revoked a State's constitutional immunity, *see Atascadero State Hospital v. Scanlon*, — U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), nor have actions against a State predicated on alleged violations of state law been permitted in federal court. *Pennhurst*, 104 S.Ct. at 918. Such immunity also bars suits against state agencies. *Id.* 104 S.Ct. at 908. This jurisdictional bar encompasses not only those actions seeking retroactive relief but also those seeking prospective relief. Consequently, the Eleventh Amendment proscribes the instant action, and the complaint as presently phrased does not pass judicial muster.

### 2. *Motion to Amend*

Plaintiffs seek to amend their complaint to add the Adirondack Park Agency as a defendant and to add an allegation challenging the validity of title 6, section 196.1 of the Code, Rules and Regulations of the State of New York. In addition, at oral argument, plaintiffs sought permission to name as defendants the state officials responsible for carrying out the provisions of § 196.4 and of § 196.1.

### A. *Substitution of State Officials as Defendants*

Generally, the Eleventh Amendment does not bar suits based on violations of federal law against state officials. When such a suit is commenced, however, the question initially arises as to whether the suit is in actuality against the State itself. If the relief sought against an official would in fact operate against the State, then the action must be characterized as one brought against the State. *Pennhurst*, 104 S.Ct. at 908. Generally, suits for retroactive relief which require payment out of a State's treasury are barred whereas suits for prospective relief are not barred. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *accord Pennhurst*, 104 S.Ct. at 909; *Dwyer v. Regan*, 777 F.2d 825 (2d Cir.1985). The instant action seeks only declaratory and injunctive relief. Plaintiffs seek no relief in connection with the injunction which would operate against the State directly as would for example, a claim for monetary damages. Therefore, proper amendment of the complaint by naming specific state officials may well cure the Eleventh Amendment defect.

### B. *Leave to Amend*

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint should "be freely given when justice so requires." The DEC and intervenor-defendants have not shown that prejudice will result from allowing the proposed amendment whereas the plaintiffs have demonstrated that a denial will result in great hardship to them because their 29 U.S.C. § 794 and 42 U.S.C. § 1983 claims, as presently phrased, must be dismissed on Eleventh Amendment grounds. *See Woods v. Missouri Department of Mental Health*, 581 F.Supp. 437 (W.D.Mo.1984). However, the court may consider the legal sufficiency of a proposed amendment in determining whether to grant or deny it. *See*

*Brame v. Ray Bills Finance Corp.*, 85 F.R.D. 568 (N.D.N.Y.1979).[3] Consequently, the court will address the legal sufficiency of the allegations included in the amendment as well as the complaint's present allegations.

### C. *Legal Sufficiency of the Proposed Amendment*

#### 1. *Rehabilitation Act*

The handicapped plaintiffs allege that § 196.4, which bans the use of mechanized vessels and aircraft on certain bodies of water within the Adirondack Park, and § 196.1, which bans the use of motorized vehicles in specified land areas, render these areas inaccessible to them and thereby violate section 504 of the Rehabilitation Act which provides, in relevant part:

> "No otherwise qualified handicapped individual ... shall solely by reason of his handicap be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."

29 U.S.C. § 794 (1984).

In *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Supreme Court delineated the scope of § 504. In *Davis*, the Court held that a nursing school's denial of admission to a severely hearing impaired applicant did not transgress the principles embodied in § 504. The institution was not required to make substantial changes in its program in order to accommodate one whose handicap rendered her not otherwise qualified for the program. *Id.* 442 U.S. at 413, 414, 99 S.Ct. at 2370, 2371. The Court explained this holding in *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985):

> *Davis* struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs: while a grantee need not be required to make "fundamental" or "substantial" modifications to accommodate the handicapped, it may be required to make "reasonable" ones.

In other words, the handicapped may not be denied meaningful access to benefits offered by those receiving federal financial assistance. *Id.* 105 S.Ct. at 721.

Although the plaintiffs herein have failed to describe their handicaps, the court will assume for the purposes of this motion that the plaintiffs are indeed "handicapped" individuals within the meaning of the Act. *See* 29 U.S.C. § 706(7)(B) (1985). The ultimate questions before the court are whether the handicapped now enjoy "meaningful access" to the Adirondack Park, and to what degree will their demands require significant changes in the administration of the Park.

Plaintiffs claim that the restrictions embodied in §§ 196.4 and 196.1 deny them meaningful access to those areas in the Adirondack Park designated as "wilderness", "primitive" and "canoe". Defendants, on the other hand, argue that the handicapped do have access to the park system as a whole and that the proposed use of mechanical or motorized vehicles will destroy the essential character of these areas resulting in a substantial modification of the existing park system. The court cannot determine the validity of these assertions absent an examination of the Adirondack Park State Land Master Plan (the Plan) which sets forth guidelines for managing the Adirondack Park. The DEC enacted the regulations in question according to the standards set forth in the Plan.

In the 1960's, it became apparent that development by private land owners within the Adirondack Park posed a serious threat

---

**3.** The court recognizes that motions for summary judgment are not ordinarily entertained until a party has had an opportunity to amend its pleading. In the instant action, however, the plaintiffs do not seek to alter or add to their substantive claims. At oral argument, plaintiffs indicated that they intended to name specific officials only in an effort to correct the Eleventh Amendment defect in the complaint. Moreover, addition of a challenge to § 196.1 would not alter the arguments of the parties. Plaintiffs have already addressed extensively the accessibility of "wilderness", "primitive" and "canoe" areas whether by land, sea or air.

to the future of the Park as wild forest land. Consequently, the governor created the Temporary Study Commission on the Future of the Adirondacks (the Commission) to study the problems associated with preservation of the Park's natural resources. The Commission suggested that a comprehensive plan be enacted in order to preserve those areas that existed in a "nearly natural state." To this end, the Commission suggested that these areas be maintained as "wilderness," *see The Future of the Adirondack Park,* pp. 43–45, and that no motor vehicles, mechanized transport or motorized equipment be allowed in wilderness areas except in cases of extreme emergency to human life or to resource values. *Id.* at 45. The Commission's report prompted the New York State Legislature to enact the Adirondack Park Agency Act in 1971. N.Y.Exec.Law § 800 *et seq.* (McKinney 1982). The Act directed the Adirondack Park Agency, together with the DEC, to develop a comprehensive plan for the management of state lands. The Plan was approved by the governor in 1972, and it was revised and again approved in 1979.

The Plan divides the Park lands into nine categories which reflect their character and use. They are: wilderness; primitive; canoe; wild forest; intensive use; wild, scenic, and recreational rivers; travel corridors; historic; and state administrative. The Plan adopted the Commission's suggestions and has severely restricted the use of motorized vehicles, equipment and aircraft in wilderness areas. This use is only allowed by administrative personnel in limited circumstances including emergencies, and all roadways are closed to the public. 1979 Plan at 20–26; 1972 Plan at 10–13. Some public traffic is, however, permitted in primitive and canoe areas. Indeed, the Plan permits public use of existing roadways in primitive areas so long as continued public use will not adversely impinge upon the preservation of an adjacent wilderness area. 1979 Plan at 24, 25; 1972 Plan at 12. Moreover, some primitive areas are publicly accessible through roadways which run contiguous to these areas. For example, Lake Lila, an area classified as primitive, is accessible via a public right-of-way along a private road to a point a short distance from the eastern shoreline. 1979 Plan at 52.

Consequently, although it is true that wilderness areas are accessible only by foot trails and waterways, primitive and canoe areas, by definition, may in some instances, be accessed by the use of motorized vessels, aircraft and vehicles.[4] Furthermore, over fifty-one percent of the Park land is classified as wild forest which does allow the use of motorized vehicles and float planes. 1979 Plan at 27–30. Eighty-three percent of the publicly usable Adirondack lake/pond surface water is open to motors; only seventeen percent is reserved for wilderness use. Environmental Impact Statement, February 28, 1979, at p. 12.

In light of the foregoing, it is clear that the handicapped do have meaningful access to the Adirondack Park as a whole. Motorized vehicles, vessels and aircraft are permitted in most of the Park. Many of those areas where such use is largely prohibited, that is, certain primitive and canoe areas, are accessible through use of nearby roadways. The only areas which the handicapped may find extraordinarily difficult to reach are those designated as wilderness.

Furthermore, the granting of special permission for the use of motorized vehicles,

**4.** A primitive area is an area of land or water that is either:

1. Essentially wilderness in character but, (a) contains structures, improvements, or uses that are inconsistent with wilderness, as defined, and whose removal, though a long term objective, cannot be provided for by a fixed deadline, and/or, (b) contains, or is contiguous to, private lands that are of a size and influence to prevent wilderness designation; or,

2. Of a size and character not meeting wilderness standards, but where the fragility of the resource or other factors require wilderness management.

A canoe area is an area where the watercourses or the number and proximity of lakes and ponds make possible a remote and unconfined type of water-oriented recreation in an essentially wilderness setting.

motorized vessels and float planes in these areas would not constitute a "reasonable" accommodation within the terms of the Act. By definition, a wilderness is

[A]n area where the earth and its community of life, are untrammeled by man—where man himself is a visitor who does not remain. A wilderness area is further defined to mean an area of state land or water having a primeval character, without significant improvements or human habitation; which is protected and managed so as to preserve its natural conditions and which (1) generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable; (2) has outstanding opportunities for solitude or a primitive and unrefined type of recreation; (3) has at least ten thousand acres of land and water or is of a sufficient size and character to make practicable its preservation and use in unimpaired condition, and; (4) may also contain ecological, geological or other features of scientific, educational, scenic or historical value.

1979 Plan at 20–23; 1972 Plan, at 8, 9. The provisions of the Plan, as evidenced by its history and language and as implemented in the DEC regulations, pay homage to the State's foresight in preserving the integrity of its undeveloped lands. It is clear that any use of motorized vehicles, vessels or aircraft in wilderness areas would be inimical to the nature of these areas. The benefit provided by the maintenance of a pristine wilderness would be derogated by such use. This is not "reasonable accommodation." An "accommodation" of this type would destroy the very benefit sought by the plaintiffs.

■ For the reasons adduced above, the court finds that the benefits afforded by the Adirondack Park are accessible to the handicapped plaintiffs in a meaningful way. Consequently, the plaintiffs' Rehabilitation Act challenge fails.

2. *Substantive Due Process*

■ The handicapped plaintiffs' Fourteenth Amendment challenge raises the question of whether §§ 196.4 and 196.1 impinge upon plaintiffs' due process rights. Because they failed to allege that any procedural defect in the adoption of the regulations undermines their validity, the plaintiffs apparently rely upon the Fourteenth Amendment's protection of certain substantive aspects of life, liberty, and property. The Supreme Court has recognized certain personal rights which concern "the individuals freedom of choice with respect to certain basic matters of procreation, marriage, and family life," as fundamental rights. *See Harrah Independent School District v. Martin,* 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979) (quoting *Kelley v. Johnson,* 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708). The Due Process Clause requires strict judicial scrutiny only when such "fundamental rights" are infringed. The right to use motorized vehicles, vessels and aircraft in the wilderness is not a fundamental right. *See, e.g., National Assn. of Property Owners v. U.S.,* 499 F.Supp. 1223 (D.Minn.1980). Therefore, the court must apply a test of reasonableness and determine whether the regulations in question are rationally connected to the State's interest in preserving its undeveloped lands in their natural, unspoiled condition. The ban on the use of motorized transportation is clearly not an arbitrary limitation imposed by an unthinking body of lawmakers. As noted hereinbefore, the plan governing the management of the Adirondack Park and the regulations adopted in accordance with its guidelines are the result of extensive study and debate. The court finds that the challenged restrictions are reasonable and further a legitimate state interest. Accordingly, plaintiffs' substantive due process challenge fails.

3. *Procedural Due Process*

■ The second group of plaintiffs, which consists of individuals who transport fishermen and trappers into the Park, allege that the enactment of the disputed regulations has deprived them of procedural due process. However, the requirements of procedural due process do not

attach unless the plaintiffs have a recognizable liberty or property interest in operating motorboats, motor vehicles or float planes in wilderness areas. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

First, plaintiffs have not been deprived of any liberty interest. Under the present circumstances, the plaintiffs may operate aircraft, motor vehicles and vessels in much of the 1.3 million acres of Park not designated as wilderness. Moreover, they may continue to guide expeditions of hunters and fishermen into the wilderness, primitive and canoe areas without the use of motorized means. Accordingly, they are free to "make a range of personal decisions concerning [their lives], family, and private pursuits." *BAM Historic District Association v. Koch,* 723 F.2d 233, 237 (2d Cir. 1983).

Second, the regulations do not deprive the plaintiffs of any property interest. "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Plaintiffs have failed to uncover any case law or statute which would provide them with a legitimate claim of entitlement to fly aircraft within the Park's wilderness areas. *See Roth,* 408 U.S. at 576, 92 S.Ct. at 2708 (finding that a property interest requires more than an abstract need for the benefit). Indeed, at least one court has held that it is impossible for individuals to acquire vested rights in the forest preserve by means of adverse possession, long use, or a prescriptive use under the New York Constitution. *See Helms v. Diamond,* 76 Misc.2d 253, 257–58, 349 N.Y.S.2d 917 (N.Y.Sup.Ct.1973). Therefore, the flying service plaintiffs' claim that they were denied procedural due process must fail.

### 4. *Equal Protection*

Both groups of plaintiffs allege that the regulations violate the Equal Protection Clause of the Fourteenth Amendment. Where a statute discriminates against a "suspect class" or infringes "fundamental rights," it is subjected to a strict standard of judicial review, that is, the challenged statute must further a compelling governmental interest or be necessary to further an overriding objective. If, however, no suspect class is involved or no fundamental right is infringed, then a minimum rationality test is applied. The court has already determined that an interest in utilizing motorized transportation in the wilderness is not a fundamental right. The flying service plaintiffs clearly do not comprise a suspect class. Because the court has determined that the regulations are rationally related to a legitimate state interest, these plaintiffs' claim must fail.

Consequently, the court must determine whether the handicapped form a suspect class entitled to a more stringent review of §§ 196.4 and 196.1.

The court holds that the physically disabled are not a suspect class. These persons are not "saddled with such disabilities, or subjected to a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Moreover, the handicapped are not a "discrete and insular minority." *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976); *see also Frontiero v. Richardson,* 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). Furthermore, the physically handicapped do not qualify for the intermediate level of judicial review applied in cases involving gender and illegitimacy. The Supreme Court has recently determined that the mentally retarded do not constitute a "quasi-suspect" class because "it would be difficult to find a principled way to distinguish a variety of other groups who perhaps have immutable disabilities setting them off from others." *City of Cleburne v. Cleburne Living Center,* — U.S. ——, 105 S.Ct. 3249, 87

L.Ed.2d 313 (1985). This reasoning applies equally to the physically disabled. Consequently, the court will apply a rational basis standard to the disputed regulations.

In *Cleburne*, the Supreme Court reversed a city government's denial of a zoning permit for a home for the mentally retarded. No rational basis for the action was found. The Court rejected the purported concern of nearby residents of potential harrassment, population congestion, and the like because these problems would apply equally well to other types of homes which were not required to obtain special permits. *Id.* 105 S.Ct. at 3259, 3260. In contrast, the regulations challenged herein are not based upon vague environmental concerns, but rather, are firmly grounded on the studies of special commissions and agencies which have demonstrated a legitimate need to protect the wilderness from the incursions of private developers. The ban on motorized vehicles, vessels and aircraft clearly furthers this objective. Moreover, §§ 196.4 and 196.1 do not particularly discriminate against the handicapped plaintiffs. In this instance, the less physically able will necessarily experience more difficulty in gaining access to the remote regions of the Park. However, under the minimum rationality test, a regulation is presumed valid if the classification drawn is rationally related to a legitimate state interest. *See Id.* 105 S.Ct. at 3254.

Therefore, plaintiffs have failed to establish that the challenged regulations violate their equal protection rights under the U.S. Constitution.

### 3. *Pendent Jurisdiction*

Inasmuch as plaintiffs' federal claims are without merit and have been disposed of by summary judgment, the court dismisses plaintiffs' pendent state claims. *See generally, Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir.1986). Moreover, *Pennhurst* requires their dismissal. A federal suit against state officials on the basis of state law contravenes the Eleventh Amendment. *Id.* 104 S.Ct. at 911.

### 4. *Summary*

Since the proposed amendments to the complaint, i.e., adding the Adirondack Park Agency as a defendant, adding individual state officials who are responsible for carrying out the provisions of the challenged regulations as defendants, and expanding the complaint to encompass land as well as wet land regulation, will not cure the deficiencies in the cause of action alleged, the motion to amend must be denied.

The constitutional deprivations alleged by plaintiffs herein as to the Rehabilitation Act, Fourteenth Amendment substantive and procedural due process and constitutional equal protection, are not legally sufficient to survive defendant and intervenor-defendants' motion to dismiss.

Accordingly, it is hereby

ORDERED, that

1. The plaintiffs' motion to amend is denied.

2. The defendant and intervenor-defendants' motion for summary judgment is granted and the complaint is dismissed.