27 F.Supp.2d 117 (1998)
Theodore E. GALUSHA, Teena Willard, and William Searles, Plaintiffs,
v.
NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION; John P. Cahill, in his official capacity as Commissioner of the New York State Department of Environmental Conservation; Adirondack Park Agency of the State of New York; Daniel T. Fitts, in his official capacity as Chairman of the Adirondack Park Agency of the State of New York; George E. Pataki, in his official capacity as Governor of the State of New York; John Doe individually; and The State of New York, Defendants.
No. 98-CV-1117 (LEK/RWS).
United States District Court, N.D. New York.
October 9, 1998.
*118 *119 Donohue, Sabo, Varley & Armstrong, Albany, NY, Albany Law School Litigation Clinic, Albany, NY, for plaintiffs.
Hon. Dennis C. Vacco, Attorney General of the State of New York, Environmental Protection Bureau, Albany, New York, for defendants, Lisa M. Burianek, Asst. Attorney General, Joseph T. Baum, Alvin O. Sabo, of counsel.

MEMORANDUM-DECISION AND ORDER
KAHN, District Judge.
On July 28, 1998, this Court granted temporary relief to the Plaintiffs through an Order to Show Cause. On August 7, 1998, a hearing was held regarding Plaintiffs' requested preliminary injunction.[1] At that time, it was agreed Defendants would submit to this Court a report regarding motorized vehicle use in a heavily visited area of the Adirondack Park ("DEC Report"). With that report now in receipt and having considered its contents in addition to the arguments offered at the August 7, 1998 hearing and the submitted papers, this Court grants Plaintiffs' motion for preliminary injunction.

I. BACKGROUND

The three plaintiffs in this action each have physical disabilities that limit their mobility. Plaintiff Theodore Galusha ("Galusha") suffers from multiple sclerosis ("MS"). He has impaired mobility and can ambulate only by using a leg brace, crutches, a walker or a wheelchair. Galusha contends, and Defendants do not contest, that his MS condition is at a sufficiently advanced stage whereby each passing day could be his last. Plaintiff Teena Willard ("Willard") is a parapalegic whose condition results from a 1978 automobile accident. Willard requires use of a wheelchair. Plaintiff William Searles ("Searles") has been deaf since birth and in 1983 was involved in an automobile accident that severely damaged his spine. Searles is also a paraplegic and requires use of a wheelchair.
Plaintiffs assert that the policies of the New York State Department of Environmental Conservation ("DEC"), the Adirondack Park Agency ("APA"), the State of New York, and its Governor, George Pataki ("Pataki"), in managing the Adirondack Park (the "Park") unfairly limit their access to areas within the Park in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213. Use of land within the Park is governed by the "Master Plan" prepared *120 by the APA pursuant to Section 816 of the Executive Law. N.Y.Exec.Law § 816 (McKinney 1996). In accordance with the Master Plan, the DEC is responsible for promulgating regulations that restrict use of the land within the Park. The primary goals of the Master Plan are to preserve and provide access to the Park for the public's enjoyment. Within certain regions of the Park, regulations prohibit the use of any non-emergency motorized vehicles on roads, trails, or pathways. The Plaintiffs assert that the only way that they can enjoy these areas is through motorized vehicle use. In the past, the State has issued temporary permits to persons with disabilities, including Plaintiff Galusha, which allowed access to certain restricted areas with motorized vehicles.[2]
On June 1, 1995, Galusha was ticketed for using an All-Terrain Vehicle ("ATV") on restricted trails in a portion of the Hudson River Recreational Area known as "Buttermilk." Subsequent to the violation, Galusha filed an ADA complaint with the Department of the Interior and New York State Division of Human Rights. In October of 1995, Galusha participated in a policy "working group" established by the DEC and composed of private individuals, State employees, groups representing the disabled, and those seeking preservation of the wilderness areas. The working group developed a proposed plan and Galusha was issued a permit to operate a motorized vehicle in the area in which he was earlier ticketed. Other persons with disabilities were given similar permits. However, the working group proposal was never formally adopted by the State.
On November 26, 1996, Galusha attempted to renew his permit, but was denied on the grounds that a moratorium on new permits was in place pending finalization of DEC policies. Efforts by other permit holders were denied as well. In the interim, the State changed the designations of certain roads, resulting in greater restrictions on motorized vehicle access by all members of the public, including the disabled. Galusha alleges that subsequent motorized vehicle access was restricted to only a patchwork of roads and trails in the Park. On June 9, 1997, Galusha attempted to access Buttermilk with an ATV and was again ticketed, prosecuted, and fined for the violation.
Plaintiffs contend that the State unjustifiably denies persons with disabilities access to certain areas of the Park while allowing non-disabled persons non-emergency use of motorized vehicles on the very same roads, paths, and trails from which the disabled are barred. Defendants counter that disabled Plaintiffs along with other non-disabled persons have motorized vehicle access to select areas of the Park, and any restrictions on motorized vehicle use in preserved areas equally applies to the disabled and non-disabled. Defendants further contend that the relief sought by Plaintiffs would violate State law.
Three causes of action are brought. The first alleges that the Defendants have violated the Americans with Disabilities Act and damaged the Plaintiffs in the amount of $1,000,000. The second claim is for injunctive relief seeking a declaration that the Defendants have violated the ADA and that "the plaintiffs and other disabled be able to utilize motor vehicles on all roads and paths on which motorized vehicles were used at the time of [the] enactment of the ADA with the exception of emergency vehicles." In the second claim, Plaintiffs also seek punitive damages in the amount of $1,000,000 against "John Doe," a New York State employee who allegedly deliberately caused the DEC and APA to intentionally violate the ADA by failing to adopt the "working group" plan. Finally, the third claim requests attorneys' fees.

II. DISCUSSION

At first blush, this action presents the seemingly vexing mandate of reconciling the public interest in protecting and preserving precious natural lands with the rights of the disabled to equal access to the environment and reasonable public accommodations. This Court recognizes the solemn responsibility of the public and State to respect the environment as a whole and those special areas *121 entrusted to us in particular. Today's decision to grant Plaintiffs' request for preliminary injunction, extending to the disabled access to the Adirondack Park, is made possible by what intervening Defendants characterize as the State's intensive and unnecessary use of motorized vehicles in protected Adirondack lands. Personal sacrifice to preserve the environment does not rest solely on the backs of the disabled. Nor are the remaining pristine portions of the environment to be available only to the able-bodied.

A. Preliminary Injunction Standard

"The general standard for issuing a preliminary injunction requires that the movant show `(1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 984 (2d. Cir.1997) (quoting International Dairy Foods Ass'n v. Amestoy, 92 F.3d 67, 70 (2d Cir.1996) (quoting in turn Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979))). With respect to government action, however, an applicable exception to this general standard exists. See Able v. United States, 44 F.3d 128, 131 (2d Cir.1995) ("[a]lthough a plaintiff who demonstrates irreparable harm may usually satisfy either [1] or [2], this choice is not always available.").
[W]here the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair ground for litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he [or she] will succeed on the merits of his [or her] claim.
Id. (quoting Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir.1989)); see also Molloy v. Metropolitan Transp. Auth., 94 F.3d 808, 811 (2d Cir.1996) ("only the `likelihood of success' standard applies when the injunction seeks to prevent government action taken pursuant to statutory authority, which is presumed to be in the public interest.") (quoting Able, 44 F.3d at 131 (2d Cir. 1995)).
"The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." Tom Doherty Assoc. v. Saban Entertainment Inc., 60 F.3d 27, 34 (2d Cir.1995) (citing Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir.1985)). "A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act." Id. at 1025. The Second Circuit has stated that the distinction between mandatory and prohibitory injunctions is important "because we have held that a mandatory injunction should issue `only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" Doherty, 60 F.3d at 34 (quoting Abdul, 754 F.2d at 1025); compare with Innovative Health Sys. Inc. v. City of White Plains, 117 F.3d 37, 43 n. 6 (2d Cir.1997) (distinction between mandatory and prohibitory injunctions is often "more semantical than substantive.") (citation omitted). The Second Circuit has likewise held that in cases involving a mandatory injunction, "the district court should not apply the less rigorous fairground-for-litigation standard and should only grant the injunction if the moving party establishes, along with irreparable injury, a likelihood of success on the merits." Id. at 43 n. 6. In the instant case, since Plaintiffs do not currently have permits allowing them on trails closed to motorized vehicles, a granting of access would alter the status quo. Thus, this request for a preliminary injunction not only involves government, but is mandatory in nature in that it alters the status quo.
A heightened burden rests upon the Plaintiffs. They must establish both irreparable harm and a likelihood of success on the merits. Plaintiffs have met that burden.

1. Irreparable Harm

Plaintiffs assert that a showing of irreparable harm may be dispensed with when the plaintiff demonstrates that the defendants *122 are engaged in, or about to engage in, actions or practices clearly prohibited by statute and that statute specifically provides for injunctive relief to prevent such violations. Plaintiffs are correct that injunctive relief is available under the ADA through the Rehabilitation Act and ultimately through the Civil Rights Act and case law. See 42 U.S.C. § 12133. Second Circuit precedent, however, suggests that an irreparable harm analysis must nevertheless be conducted. See Molloy, 94 F.3d 808, 811; (holding that plaintiffs are required to establish irreparable harm in ADA claim) see also Innovative Health Sys., 117 F.3d at 42 (same).
Plaintiffs contend that they will suffer irreparable harm if the preliminary injunction is not granted. "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and `for which a monetary award cannot be adequate compensation.'" Tom Doherty Assocs., 60 F.3d at 37 (2d Cir.1995) (quoting Jackson Dairy Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979)). Plaintiffs argue essentially that every day they miss in the Park constitutes an irreparable harm because no amount of money could compensate for such a loss. Galusha specifically asserts that his illness causes him to be bedridden for months on end and that each day he is deprived access to the Park could be his last. Defendants submit that Plaintiffs will not suffer irreparable harm absent a preliminary injunction since they will still have access to the Park through the use of motor vehicles on a limited number of designated roads within the Park. Defendants' contention is unavailing. Plaintiffs' access to a naturally ever-changing environment is impermissibly limited. Plaintiffs have established threat of irreparable harm. Absent preliminary relief, they will suffer an injury that is present, actual, and not calculable.

2. Likelihood of Success on the Merits

Plaintiffs assert that the Defendants are denying them motorized vehicle access to roads, trail areas and paths within the Park and on other State lands to which non-disabled individuals have access. Plaintiffs further contend that by excluding the disabled from equitable access to these areas, Defendants deny them the benefits of public lands. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subject to discrimination by that entity." 42 U.S.C. § 12132. "A plaintiff who raises a disability discrimination claim bears the initial burden of establishing a prima facie case." Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 383 (2d Cir.1996).

a. Qualified Individual
The term `qualified individual with a disability' means:
an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.
42 U.S.C. § 12131(2). It is apparent that since the Plaintiffs have physical disabilities that severely limit their mobility, they each fit the definition of a "qualified individual with a disability."

b. Public Entity
The ADA defines a public entity as "any State or local government [or] any department, agency ... or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). The APA, the DEC, and the State of New York all qualify as public entities under the ADA.

c. Denial of Benefits by Reason of Disability
The central purpose of the ADA and its forerunner, Section 504 of the Rehabilitation Act, 29 U.S.C. § 720 et seq., is to assure "evenhanded treatment between the disabled and the able-bodied." See Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir.1998) (citing Southeastern Comm. College v. Davis, 442 U.S. 397, 410, 99 S.Ct. 2361, 60 L.Ed.2d 980 *123 (1979)). Courts have long followed the Rehabilitation Act's jurisprudence in interpreting ADA requirements. See, e.g., Lincoln Cercpac v. Health and Hosps. Corp., 147 F.3d 165, 167 (2d Cir.1998); McPherson v. Michigan High Sch. Athletic Ass'n Inc., 119 F.3d 453, 459-460 (6th Cir.1997); Pottgen v. Missouri St. High Sch. Activities Ass'n, 40 F.3d 926, 930 (8th Cir.1994). That jurisprudence has established that Section 504 of the Rehabilitation Act provides that an established disparate impact happening to the detriment of persons with disabilities is sufficient to state a claim of impermissible conduct in at least some, if not all, cases. See Alexander v. Choate, 469 U.S. 287, 299, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) ("[W]e assume without deciding that § 504 [of the Rehabilitation Act of 1973] reaches at least some conduct that has an unjustifiable disparate impact on the handicapped."). Likewise, the ADA is "intended to prohibit outright discrimination as well as those forms of discrimination which deny disabled persons public services disproportionately due to their disability." Crowder v. Kitagawa, 81 F.3d 1480, 1483 (9th Cir.1996); See 42 U.S.C. § 12101(b)(1) (The ADA "provide[s] a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities."); see also 42 U.S.C. § 12101(a)(5) ("[I]ndividuals with disabilities continually encounter various forms of discrimination, including ... the discriminatory effects of ... overprotective rules and policies.")
Here, Plaintiffs claim that current restrictions on motorized vehicle use in various areas of the Park deny them the very "evenhanded treatment" that the ADA promises. Defendants counter that the motor vehicle ban on certain trails, paths, and roadways does not per se exclude the Plaintiffs from the Park because of their disabilities, nor does it have a disparate impact upon them, because it applies to everyone equally.
Although it is true that all visitors are forbidden to use motorized vehicles in restricted areas of the Park, there is no doubt that while persons without disabilities may access those areas on foot, Plaintiffs and other persons with similar disabilities may not. Moreover, Defendants' contention that the motorized vehicle prohibition applies equally to persons with and without disabilities is unavailing. Surely Defendants would not suggest that the provision of other methods of extending physical access to the disabled, such as through constructing widened doorways or ramps, is somehow not required under the ADA because such accommodations are equally unavailable to both persons with and without disabilities. See, e.g., Dopico et al. v. Goldschmidt et al., 687 F.2d 644, 651-52 (2d Cir.1982) (holding alleged absence of wheelchair ramps to public transportation stated cause of action). It is apparent from the record that Plaintiffs possess a substantial likelihood of proving that the DEC's policy has a disparate impact on persons with disabilities.
Still, there remains a "balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests [of the State] ... in preserving the integrity of [a public] program." Alexander, 469 U.S. at 300, 105 S.Ct. 712 (citing Southeastern Comm. College v. Davis, 442 U.S. 397, 410-413, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)). The Supreme Court struck that balance by requiring that persons with disabilities be provided "meaningful access" through reasonable accommodations to publically funded benefits or programs without otherwise "fundamentally" or "substantially" altering the underlying benefit or program. Id., at 300-01, 99 S.Ct. 2361; see also Rothschild v. Grottenthaler, 907 F.2d 286, 292 (2d Cir. 1990).
Defendants suggest that with over one million acres of Intensive Use land, as opposed to Forest Preserve, currently accessible by motorized vehicle, Plaintiffs already have meaningful access to the Park. Defendants note that in addition, DEC has in the past issued scores of temporary revocable motor vehicle use permits (TRPs) to various Park visitors. Approximately nine percent of these permits have been issued to persons with disabilities. Between 1990 and 1997, more than 1600 TRPs were issued for such non-emergency needs as archery shoots, snowmobile events, hangliding contests, snowmobile trail construction, road maintenance, utility maintenance, and the convenient *124 ingress and egress of private individuals seeking to transport season-long camping equipment.[3] (See Galusha Aff. O-1). Defendants claim that current policy as it impacts upon Plaintiffs and others merely seeks to prohibit motorized vehicle use in those areas that state law requires be "forever kept wild." See Def.Mem. of Law, at 5; see also N.Y. Const., Art. XIV, § 1.
But of course the amount of access Plaintiffs have to the Park as measured in acres is not dispositive as to whether "meaningful access" is present. Relatedly, determination of those areas for which TRPs have been issued in the past is not dispositive as to whether meaningful access is available in the present. See generally Alexander v. Choate, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (holding that regardless of previous 20 inpatient days Medicaid funding limitation, present 14 day limitation provided meaningful access). Lastly, as to potential inconsistency with state law, it is well-established that where "Congress intended to exercise its constitutional authority to supersede the laws of a state, the Supremacy Clause requires courts to follow federal law." Levitin v. PaineWebber, 1998 WL 665039 *6 (2d Cir.1998) (citing U.S. Const., Art. IV, cl. 2 and Barnett Bank v. Nelson, 517 U.S. 25, 30, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996)). Such Congressional intent is apparent from among other areas of the statute, the ADA's abrogation of Eleventh Amendment immunity. 42 U.S.C. § 12202; see also 42 U.S.C. § 12101.
"Meaningful access means [providing] reasonable accommodations in [a] program or benefit." See Rothschild v. Grottenthaler, 716 F.Supp. 796, 800 (S.D.N.Y.1989) (citing Alexander v. Choate, 469 U.S. at 301, 105 S.Ct. 712) (internal quotations omitted). Reasonable accommodations are those that do not "require either a modification of the essential nature of [a] program or impose an undue burden on the [program provider]." Easley v. Snider, 36 F.3d 297, 302 (3d Cir. 1994); see also Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir.1995); Innovative Health Sys., 931 F.Supp. 222 (S.D.N.Y.1996).
This Court delayed ruling on Plaintiffs' likelihood of success in showing the absence of meaningful access with reasonable accommodations until it received the DEC report from Defendants regarding motorized vehicle use in Camp Santanoni ("Santanoni"), a crown jewel of the Adirondack Park. According to the DEC, Santanoni is a "one-of-a-kind property in the Forest Preserve offering access to unique pristine wild lands." See DEC Rpt. at 1. It is a special wilderness retreat within the Park, consisting of nearly 13,000 acres of historic buildings, roads, and lands and is the only state owned "Great Camp" in the Adirondacks. Id.
[Santanoni's] building complexes and carriage road are listed in State and National Registers of Historic Places as being important to local and state history, culture, and architecture. The setting of the site on a remote undeveloped lake is a component of the property's significance. The complex is currently under consideration by the National Park Service for possible elevation to National Historic Landmark status.
Id. Indeed, numerous non-disabled Park vistors recognize the significance of Santanoni. According to DEC, it is a popular hiking destination and an area widely used for cross-country skiing, snowmobiling, camping, horseback riding, and hunting. Id. at 2.
Without the assistance of motorized transport, disabled Plaintiffs effectively have zero access to Santanoni and other Forest Preserve crown jewels. This Court finds that *125 the sum deprivation to such essential areas of the Park establishes Plaintiffs' substantial likelihood of success in demonstrating a denial of meaningful access. See Rothschild, 907 F.2d at 293 (finding that meaningful access includes access to essential, but not extra services); Crowder v. Kitagawa, 81 F.3d 1480 (9th Cir.1996) (holding 120 day animal quarantine denied visually disabled meaningful access to State services and activities).
Allowing the disabled motorized access, however, would not be required under the ADA were it to "fundamentally" or "substantially" alter the Park program. See Alexander, 469 U.S. at 300, 105 S.Ct. 712; Southeastern Comm. College v. Davis, 442 U.S. 397, 412-413, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir.1995). Given the State's extensive and often unnecessary current use of motorized vehicles on Forest Preserve roads, extending necessary motorized access to a limited number of persons with disabilities on those very same roads can hardly be said to "fundamentally" alter the Park program. According to the State's own report, during the last two years there has been frequent, daily, non-emergency motorized vehicle use of existing roadways in the Forest Preserve. See (DEC Rpt. at 3-6). DEC has authorized motorized vehicle use of Santanoni access roads for the daily ingress and egress of independent contractors, DEC data collection and research efforts, maintenance workers, and security patrols. DEC even authorizes extensive use of Santanoni access roads to inmates from the Department of Corrections Services' (DOCS) Moriah Shock Incarceration Facility. Despite general prohibitions against motorized vehicle use in the Forest Preserve, DOCS makes use of such vehicles in Santanoni in order to minimize inmate travel time and maximize work hours. See (DEC Rpt. at 4). Several times a week inmates are driven into Santanoni to repair trails, clear vegetation, clean up after contractors and collect trash  so the lands may be fully enjoyed by able-bodied visitors.
Current policy, whereby a variety of DEC and non-DEC personnel stream into protected lands in motorized vehicles daily and without necessity, while persons with disabilities are prohibited from utilizing less obtrusive motorized vehicles necessary for their access to those same lands, is irrational and unfair. Extending to persons with disabilities permission to use limited motorized transport on the same roads currently being used is reasonable and does not cause any undue hardship or fiscal or administrative burdens on the public entity involved. See Staron, 51 F.3d at 356; Innovative Health Sys., 931 F.Supp. 222 (S.D.N.Y.1996).
Defendants argue that the present case does not differ significantly from a previous case decided in the Northern District of New York dismissing a challenge to a similar DEC prohibition on the use of motorized vessels on state-owned bodies of water located within Adirondack Park. See Baker v. Department of Envtl. Conservation, 634 F.Supp. 1460 (1986) (McCurn, J.). At the outset, it is noted that the Baker case does not constitute controlling authority. See, e.g., Friedenstein v. United States, 125 U.S. 224, 238, 8 S.Ct. 838, 31 L.Ed. 736 (1888) (Field, dissenting) (explaining that a district court holding is not controlling authority). Additionally though, in Baker, decided 12 years ago, there was no finding of intensive and unnecessary use of motorized vessels by persons without disabilities. Id. There, an extension of motorized vessel access may have fundamentally altered the Park program. Here, an extension of motorized vehicle access via currently used roadways does not.

III. CONCLUSION

The balance of equities in this case clearly rests with the Plaintiffs. Their harm is irreparable and incalculable. A grant of preliminary relief will at most result in a proportionately small, if not negligible, increase in motorized traffic in the Adirondack Park. But even that need not be the result. Hopefully, today's decision will prompt Defendants to further reduce the otherwise unnecessary use of motorized vehicles in what is to be largely protected and preserved areas of the Adirondacks, thus producing a net benefit for the environment and equitable access to it by persons with disabilities.
For the reasons stated above, and
*126 Upon consideration of the papers presented to the Court by Plaintiffs, including the Affidavits of Theodore Galusha, Teena Willard, William Searles, and Alvin Sabo, with the exhibits appended thereto, and the Plaintiffs' Memorandum of Law in support of a Temporary Restraining Order and Preliminary Injunction, Memorandum of Law in further support of the same, and proposed Interim Order; and
Upon consideration of the papers presented to the Court by Defendants, including Affidavits of Raymond E. Davis, Kenneth R. Hamm, John Banta, Lisa M. Genier, Gregory K. Jones, and Frank Dunston, with the exhibits appended thereto and Defendants' Memorandum of Law in further opposition to a Temporary Restraining Order and Preliminary Injunction, Memorandum of Law in further opposition to a Preliminary Injunction and proposed Interim Order; and
Upon consideration of the papers presented to the Court by intervenor defendants, including the Affidavit of Peter Paine and Affidavits of Dean S. Sommer, Esq., David Bronston, Val Washington, Peter Bauer, Linda Champagne, Graham L. Cox, Lisa M. Genier, Debra Hamilton, Ernest B. LaPrarie, Jeffery Massey, and Memorandum of Law in support of intervention; upon all the proceedings herein,
IT IS HEREBY ORDERED that proposed intervenor defendants' motion to intervene is GRANTED, and
ORDERED that:
1. Until further determination is made by this Court, the following roads shall be open for motorized vehicle use by persons with certified mobility impairment disabilities, consistent with Paragraph # 3 as set forth below:
Newcomb Lake Road (including other roads in the Camp Santanoni area of the Adirondack Park that are used by DEC and non-DEC personnel for non-emergency use);
Moose River Plains Roads (not including spurs such as Slide Pond Loop, Otter Brook Road, and Falls Pond Trail);
Lake Luzerne Campsite  4th Lake;
Buttermilk Roads of the Hudson River Recreation Area;
Cod Pond Road;
Gay Pond Road;
Jabe Pond Road; and
Lily Pond Road.
2. No motorized vehicle access is authorized by this Court for those with mobility impairment disabilities on hiking trails, snowmobile trails, horse trails, foot paths, other pedestrian paths, or waterways in the Adirondack Park Forest Preserve not otherwise used by non-emergency motorized vehicles. Notwithstanding any other provision of this Order and for the purposes of this Paragraph only, snowmobiles are not considered motorized vehicles.
3. Persons wishing to take advantage of the relief set forth in Paragraph # 1 must have a current Department of Environmental Conservation ("DEC") motorized vehicle temporary revocable permit issued pursuant to Commissioner's Policy CP-3 or possess physician certification of mobility impairment disability.
4. For the purposes of this Order, motorized vehicles include automobiles, all-terain vehicles, snowmobiles, and other vehicles propelled by power other than muscular power. Further and only for the purposes of this Order, vehicles used exclusively for agricultural purposes and camper recreational vehicles are not considered motorized vehicles.
ORDERED that Plaintiffs' Motion for a Preliminary Injunction pursuant to Fed. R.Civ.P. 65(a) as limited above is GRANTED.
ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.
IT IS SO ORDERED.
NOTES
[1] At the August 7, 1998 hearing, a motion of various environment preservation groups to intervene as party defendants pursuant to F.R.Civ.P. 24(a) was granted from the bench.
[2] From the record, it appears that Willard and Searles have never applied for permits that would allow them to use a motorized vehicle on restricted pathways.
[3] Permits are not supposed to be issued for activities that would otherwise violate state law. The factual certainty as to exactly for which areas TRPs have been issued and whether or not they were issued consistent with state law remains to be determined. Having discerned the essential facts of this case, however, it is not necessary for this Court to make a finding at this time regarding the scope of previously issued TRPs. See Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 984 (2d Cir.1997) ("[T]he district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when essential facts are not in dispute.") It is uncontroverted by all parties to the case that Park roads on which visitor motorized vehicle use is prohibited are currently being used by DEC and non-DEC personnel for nonemergency needs.