**People of the State of NEW YORK, by Eliot SPITZER, Attorney General of the State of New York, Plaintiffs,**

v.

**COUNTY OF DELAWARE, Delaware County Board of Elections, Frank Oles, in his official capacity as Commissioner of the Delaware County Board of Elections, and Evelyn Fitch, in her official capacity as Commissioner of the Delaware County Board of Elections, Defendants.**

No. 99–CV–1872.

United States District Court, N.D. New York.

Feb. 8, 2000.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

By Order dated January 18, 2000, this court required that defendants appear at a February 1, 2000 proceeding to show cause why a preliminary injunction should not be issued that mandates defendants' compliance with, *inter alia*, the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131–34 ("ADA"), in their oversight of polling places. Defendants appeared at the hearing and opposed the injunction. For the reasons that follow, the court finds defendants' opposition to the injunction to be largely unwarranted and grants plaintiffs certain injunctive relief, as well as their request to amend their complaint.

## BACKGROUND

▉ Plaintiffs, the people of the state of New York, seek a preliminary injunction requiring defendants to modify polling places in Delaware County to be accessible to voters with physical disabilities for the March 7, 2000 New York presidential primary.[1] Absent this injunctive relief, plaintiffs contend, disabled voters residing in Delaware County will be denied the right to vote in contravention of both state and federal law, including: the ADA and the regulations promulgated thereunder; the Voting Accessibility for the Elderly and Handicapped Act, 42 U.S.C. § 1973ee, *et seq.* ("VAEHA");[2] New York State Election Law § 4–104(1–a) (McKinney 1998)

Office of the Attorney General, Civil Rights Bureau, New York City, for plaintiffs, Carrie H. Cohen, AAG., of counsel.

Delaware County Attorney, Stamford, New York, for defendants, Richard B. Spinney, of counsel.

[1] Plaintiffs bring this suit as *parens patriae* to vindicate a quasi-sovereign interest in the health and well being of the disabled citizens of defendant Delaware County, namely the right to vote. *See, e.g., People of the State of New York v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir.1982) (New York had standing to sue in *parens patriae* for violations of 42 U.S.C. § 1985 on behalf of the mentally disabled), *modified on other grounds*, 718 F.2d 22 (2d Cir.1983) (*en banc*). Here plaintiffs assert that individual voters cannot bring suit because violations of the ADA, *et al.*, will be widespread on election day and some voters will not learn that their polling places are inaccessible until election day. Given plain-

tiffs' assertions, and that defendants do not challenge plaintiffs' standing, the court finds plaintiffs enjoy standing..

[2] The VAEHA requires that before any action may be brought, a plaintiff must notify the chief election officer of a state of a defendant's noncompliance and a period of forty-five days must elapse after the date of notification. *See* 42 U.S.C. § 1973ee–4(b). More than forty-five days have passed since plaintiffs notice to New York's State Board of Elections on November 17, 1999, therefore plaintiffs motion to amend their complaint and add this claim is **granted.**.

("NYSEL"); New York State Human Rights Law, Executive Law § 290, *et seq.* (McKinney 1993) ("NYSHRL"); and New York State Civil Rights Law § 40–c (McKinney 1992) ("NYSCRL").[3]

Essentially, plaintiffs argue that polling places in Delaware County have been habitually inaccessible to the disabled. By dereliction of their duties, plaintiffs continue, defendants "have prevented individuals with physical disabilities ... from participating in the American tradition of voting at their public places, in an integrated setting, along with their friends, neighbors, and colleagues." Plfs' Mem. of Law at 3. According to 1998 surveys undertaken to determine the accessibility of Delaware County's polling sites by the Office of the Attorney General ("OAG") and the Catskill Center for Independence ("Catskill Center"), these designated polling centers are largely inaccessible to disabled voters.[4] The surveys, which used standards promulgated by the ADA Accessibility Guidelines for Buildings and Facilities and the New York State Uniform Fire and Building Code § 1100, catalogued four types of accessibility problems: (1) parking accessibility; (2) pathway or access to entrance accessibility; (3) entrance accessibility; (4) and the accessibility of the interior of the site. *See* Zachmeyer Aff. ¶¶ 12–13, Exs. C, L. Parking accessibility deficiencies would include insufficient access aisles to allow disabled people room to maneuver in and out of their vehicles, while a pathway problem might be an unlevel surface that made it difficult for people with walkers or wheelchairs to reach the site. An entrance might be considered inaccessible if it lacked a ramp or featured a ramp without

handrails, while an interior might be non-compliant if its aisles were not large enough for wheelchairs to maneuver. *See Id.* at ¶¶ 13–14. According to OAG's and the Catskill Center's surveys, forty-three of the forty-four 1998 polling places were inaccessible to the disabled, and many of the sites suffered from multiple failings.[5] *Id.* at ¶¶ 24, 34.

The 1998 was not the first survey of Delaware County's polling places; it was only the most recent comprehensive survey. Previous surveys conducted 1993, 1994, and 1996 allegedly found pretty much the same results as the 1998 survey; and a 1999 spot survey of seven sites, conducted in response to the County's assertion that the 1998 survey's data was outdated, found that all seven of these polling places allegedly had not made necessary modifications. *Id.* at ¶ 31. Plaintiffs, accordingly, seek a preliminary injunction compelling defendants to comply with the aforementioned disability laws, namely through insuring access at polling sites that plaintiffs now consider inaccessible, by March 7, 2000—the date of the New York presidential primary.

Essentially, defendants' argument is threefold. First, they contend that as the townships are responsible for maintaining the polling places, the townships—not defendants—are responsible for complying with the aforementioned laws. Second, although they do not deny that some sites are inaccessible, they argue that both they and the townships have made good faith efforts to comply with applicable law, but the OAG and the Catskill Center have been overly bureaucratic in determining whether sites are accessible. At oral argu-

---

3. From time to time, for brevity's sake, the court will refer to these laws as "the ADA, *et al.*"

4. The Catskill Center is a not-for-profit organization that specializes in assisting individuals with disabilities to live independently. *See* Affidavit of Richard F. Zachmeyer ("Zachmeyer Aff.") ¶¶ 3–4. Its surveys were conducted by Richard F. Zachmeyer, its Executive Director. Zachmeyer has extensive

experience in conducting such surveys. *Id.* at ¶ 9.

5. For instance, according to these surveys, forty-three of the forty-four sites have inaccessible parking; thirty-eight of the forty-four sites feature faulty pathways; thirty-three of the forty-four sites have inaccessible entrances; and seventeen of the forty-four sites have inaccessible interiors. *Id.* at ¶ 34, Ex. K.

ment, for instance, counsel noted that a site where a handicapped parking sign was placed at five feet instead of seven feet was determined to have inaccessible parking. Third, should the court find they are the correct parties for the purposes of plaintiffs' motion, defendants submit that injunctive relief is inappropriate. The County's townships are rural and often their choice of facility is limited to a building or two; moreover, given the paucity of complaints—defendants Evelyn Fitch and Frank Oles, Election Commissioners for Delaware County, have received just one accessibility complaint since Oles' tenure began in 1984—defendants posit that there can be no finding of irreparable harm. Finally, if the court should find an injunction is necessary, defendants insist it is unreasonable to get all of the townships in compliance with the disability acts by the March primaries.

The court examines these arguments *seriatim.*

## DISCUSSION

### I. Are Defendants the Correct Parties?

Defendants contend that the real parties in interest are the townships, who are responsible for selecting and maintaining polling sites. They maintain that "there is nothing contained in the Election Law that requires that a County make a polling place handicapped accessible" because "the County has no rol[e] in selecting the polling place"; rather, "such selection is done by the town in question." Dfts' Mem. of Law at 3.

To the extent that they argue that the townships are responsible for maintaining polling sites, their argument is valid. The remainder of their argument is unavailing, however. Election Law § 4–104(1) (McKinney 1998) clearly notes:

> If, within the discretion of the board of elections a particular polling place is found to be unsuitable or unsafe or should circumstances arise that make a designated polling place unsuitable or

unsafe, then the board of elections is empowered to select an alternate meeting place.

"Board of elections" refers to "the board of elections of any county in the state of New York and the board of elections in the city of New York." Election Law § 1–104(26) (McKinney 1998). Clearly, if a polling place within its jurisdiction is found to be "unsuitable" or "unsafe" because it is not accessible to disabled people, then, at a minimum, it is defendants' duty under § 4–104(1) to select an alternate, suitable meeting place. There is no dispute that defendants have been advised by the OAG that many of the County's polling places are inaccessible. Defendants cannot bury their heads in the sand; they must comply with the law. *See, e.g., Hill v. State Bd. of Elections,* 120 A.D.2d 55, 507 N.Y.S.2d 674 (2d Dept.1986) (upholding certain injunctive relief against New York City Board of Elections because it "failed to comply with the Legislative mandate that all polling places must be made accessible to the physically handicapped and that detailed written determinations must be prepared and filed for each site which is not accessible"). Defendants are proper parties for purposes of this complaint.

### II. Standards for a Preliminary Injunction

The standards for a preliminary injunction are well-settled. To obtain a preliminary injunction, plaintiffs must show: "(a) irreparable harm should the injunction not be granted, and (b) either (i) a likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits and a balance of hardships decidedly in favor of the movant." *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 376 (2d Cir.1997) (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 31 (2d Cir.1995) (internal citation omitted)). Issuing a preliminary injunction is regarded as a drastic measure. *Borey v. National Union Fire Ins. Co.,* 934 F.2d 30, 33 (2d Cir.1991).

## A. Irreparable Harm

■ The showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990); *Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc.*, 875 F.Supp. 966, 974 (E.D.N.Y.1994); *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir.1995). The mere possibility of harm is not sufficient: the harm must be imminent and the movant must show he is likely to suffer irreparable harm if equitable relief is denied. *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 (2d Cir.1985); *Borey v. National Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir.1991).

■ Plaintiffs submit irreparable harm is presumed because defendants admit that at least some of the townships feature inaccessible polling places; in other words, they posit that an actual showing of irreparable harm is unnecessary when a plaintiff demonstrates that a defendant is engaged in, or about to engage in, actions or practices clearly prohibited by statute and that statute specifically provides for injunctive relief to prevent such violations. Plaintiffs correctly discern that injunctive relief is available under the ADA. *See* 42 U.S.C. § 12133. As the District Court noted in *Galusha v. New York State Dep't of Env. Conserv.*, 27 F.Supp.2d 117, 124 (N.D.N.Y. 1998) (Kahn, J.), however:

> Second Circuit precedent, however, suggests that an irreparable harm analysis must nevertheless be conducted. *See Molloy [v. Metropolitan Transp. Auth.]*, 94 F.3d 808, 811 [ (2d Cir.1996) ] (holding that plaintiffs are required to establish irreparable harm in ADA claim); *see also Innovative Health Sys., [Inc. v. City of White Plains,]* 117 F.3d [37] 42 [2d Cir.1997] (same).

The court will not presume irreparable harm here.

■ Plaintiffs allege the irreparable harm is the denial of the right to vote. By refusing to make polling places accessible to disabled voters, plaintiffs theorize, Delaware County constructively is disallowing certain of its citizens the right to this constitutionally protected franchise. Unquestionably, the right to vote in an election is hallmark of our democracy. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 534, 11 L.Ed.2d 481 (1964). The right to vote in a primary election, moreover, is at least as important as the right to vote in a general election. Thus, federal courts have the authority and obligation to protect the franchise in a primary election. *See, e.g., Smith v. Allwright*, 321 U.S. 649, 664–65, 64 S.Ct. 757, 765, 88 L.Ed. 987 (1944). If plaintiffs demonstrate the inaccessibility of Delaware County's polling places will prevent physically disabled voters from voting, then they will have shown the requisite irreparable harm.

On the one hand, the OAG admitted during oral argument that it had not received a single complaint from a citizen of Delaware County regarding the inaccessibility of its polling places, which echoes defendants' argument that accessibility to the polling places has been almost a non-issue for Delaware County. However, defendants have not controverted plaintiff's statistical testimony that a considerable number of the County's residents over the age of sixteen suffer from a significant, disabling condition that presumably would present an impediment to their voting should a polling place not be accessible. According to 1990 Census figures, 3,525 residents—or about ten percent of the County's total population—have difficulty using stairs, while 1,847—or about five percent—cannot use stairs at all. Another

348 use a wheelchair, while 933 others used a cane, crutches or a walker for six months of more. Affirmation of Carrie H. Cohen, AAG ("Cohen Aff."), Ex. BB. Some of these figures presumably overlap, but it is not too remote an extrapolation to determine that a sizeable portion of Delaware County's voting population would be presented with unnecessary difficulties if the polling places they seek to use are truly inaccessible. More simply put, these figures are too large to ignore, especially in light of the fact that the prospective harm is great and compliance with the ADA, *et al.*, is mandatory.[6] Plaintiffs have shown irreparable harm.

### B. Likelihood of Success on the Merits

In order to demonstrate a likelihood of success on the merits, plaintiffs are not required to show that success on their complaint is an absolute certainty, but rather that the probability of success is "better than fifty percent." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985). Given the facts as alleged, plaintiffs' chance of success easily exceeds this threshold.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subject to discrimi-

nation by that entity." 42 U.S.C. § 12132. Failure to make polling places accessible violates these provisions. *See Lightbourn v. El Paso*, 118 F.3d 421 (5th Cir.1997), *cert. denied sub nom., Lightbourn v. Garza*, 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998).[7] Ultimately, to prevail on their complaint, plaintiffs must show three things: (1) that they are qualified individuals with a disability (2) who, by reason of their disabilities, are excluded from participation in or denied the benefits of (3) a "service, program or activity" of a public entity. *See Lightbourn*, 118 F.3d at 431.[8]

The term 'qualified individual with a disability' means:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). Plaintiffs, as *parens patriae*, represent a class of people who have physical disabilities that severely limit their mobility, therefore they each fit the definition of a "qualified individual with a disability." Plaintiffs meet the first element of this test. The ADA defines a "public entity" as "any State or local gov-

---

**6.** Moreover, in a Reply Affidavit submitted by Christine Zachmeyer, the program manager of the Catskill Center, she notes that the Center itself has received complaints from Delaware County residents that "either ... they were unable to vote because their polling place was inaccessible[,] or that although they were able to vote, they could not do so easily or without assistance because their polling place was inaccessible." *Id.* at ¶ 3.

Although these complaints would be more significant if the OAG or defendants received them, they nonetheless present anecdotal evidence that the sites in question have been inaccessible in previous elections.

**7.** In *Lightbourn*, the Fifth Circuit overturned a District Court's holding that the Texas Secre-

tary of State had a duty to make sure local election authorities complied with ADA in providing accommodations to allow visually impaired persons to vote in secret. The Court overruled the District Court not because the voting accommodations did not violate the ADA, but because the plaintiffs did not demonstrate the Secretary's responsibility for the alleged ADA violations.

**8.** At this juncture, the court deems it necessary only to examine the merits of plaintiffs' ADA claims. Given that the court finds a preliminary injunction is warranted under this statute, for the sake of expedience, it does not address plaintiffs' other statutory claims.

ernment [or] any department, agency ... or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Certainly the County and defendant Delaware County Board of Elections fit this billing. Given, as discussed *infra*, that accessibility to polling places qualifies as a "service, program or activity," the third element of the test is met. The crux of the instant motion is whether plaintiffs can demonstrate that it is more likely than not that by reason of their disabilities, they are excluded from participation in or denied the benefits of voting in Delaware County. They can.

Although defendants dispute the scope of inaccessibility, they do not dispute that at least some of the County's polling places are inaccessible to disabled voters. Indeed, defendants admitted as much at the February 1, 2000 hearing. Having examined the ample, largely uncontroverted evidence provided by plaintiffs, much of which documents in detail the inaccessibility of the County's polling sites, the court is further convinced that plaintiffs stand an excellent chance of prevailing on their complaint.

Plaintiffs have shown both irreparable harm should the injunction they seek not be granted and a likelihood of success on the merits, therefore they are entitled to a preliminary injunction.

### III. Scope of the Preliminary Injunction

■ The intent of this preliminary injunction is to mandate defendants' compliance with the ADA Accessibility Guidelines for Buildings and Facilities, and the New York State Uniform Fire and Building Code § 1100, to the degree its is feasible to do so by the March 7, 2000 New York presidential primary. For instance, it is feasible to create sufficient handicapped parking places near the entrance of the polling sites through use of acceptable, correctly placed parking signage; it is not feasible for a polling site, where it currently is lacking such, to paint lines outlining designated parking spaces, as it is winter. It is feasible to install door handles that can be easily manipulated by persons using wheelchairs or walkers; it is not feasible for polling sites with doorways that currently are not sufficiently wide enough to make the structural changes to expand those doorways to a width of at least thirty-two inches. It is feasible to install a temporary ramp of acceptable slope with handrails and a non-slip surface at non-complying polling sites; it is not feasible for a polling site currently lacking such a ramp to install a permanent one. It may even be feasible to select a new polling place that complies with the ADA Accessibility Guidelines for Buildings and Facilities and New York State Uniform Fire and Building Code § 1100, or is more compliant than the site currently being used; but it certainly is not feasible for the court to detail every conceivable situation in which a change must be made. To that extent, the parties are directed to act in good faith to insure compliance with the aforementioned building guidelines and code.

The court recognizes that as defendants do not exercise physical control over the polling places, it may be difficult for them to insure compliance with this Order. Yet, to a certain extent defendants are hoist by their own petard: according to Election Law § 4–104(1), if a polling place is "unsuitable" or "unsafe"—and presumably a polling place not in compliance with the ADA Accessibility Guidelines for Buildings and Facilities would be both unsuitable and unsafe to disabled voters—then the board is empowered to select an alternate, suitable place. That they did not do so, despite having known that at least some of the polling sites were not accessible to the disabled, is not plaintiffs' fault. Defendants are admonished to use their abilities to insure compliance with this Order.

Parties also are advised that this is only a preliminary injunction; if, hypothetically speaking, plaintiffs find it necessary for the ultimate resolution of this complaint to add new parties, such as townships who

unreasonably refuse to comply with defendants' efforts to insure handicapped accessibility at polling sites, then the court may entertain such a motion.

Should defendants need technical assistance in complying with the Guidelines and the Code, plaintiffs have offered to provide as much. Indeed, plaintiffs shall continue to offer technical assistance.

The court intends to appoint an independent entity to monitor defendants' compliance with this Order and to determine how accessible Delaware County's polling sites are during the March 7, 2000 presidential primary. If the parties can agree upon an organization to monitor compliance, they shall inform the court in writing by February 22, 2000. If the parties cannot agree, each shall submit a list naming no more than three organizations who each proposes can monitor the sites by February 22, 2000.

Lastly, failure to comply with the terms of this injunction may result in sanctions, including monetary penalties.

### CONCLUSION

Based upon the foregoing, plaintiffs' motion to amend is **GRANTED** and plaintiffs' motion for a preliminary injunction is **GRANTED.** Defendants shall, in good faith and to the best of their abilities, insure that polling places in Delaware County are accessible to disabled voters, in accordance with the ADA Accessibility Guidelines for Buildings and Facilities and the New York State Uniform Fire and Building Code § 1100, to the degree its is feasible to do so by the March 7, 2000 presidential primary. Plaintiffs shall continue to offer technical assistance to help insure defendants comply with this Order. The court will appoint an independent organization to monitor defendants' compliance with this Order. If the parties can agree upon an organization to monitor compliance, they shall inform the court in writing by February 22, 2000. If the parties cannot agree, each shall submit a list naming no more than three organizations who each proposes can monitor the sites by February 22, 2000. Lastly, failure to comply with the terms of this injunction may result in sanctions, including monetary penalties.

**IT IS SO ORDERED.**