WESTCHESTER DISABLED ON THE MOVE, INC., et al. Plaintiffs

v.

COUNTY OF WESTCHESTER, et al. Defendants

No. 04 CIV. 1893(SCR).

United States District Court, S.D. New York.

Oct. 22, 2004.

mately recovered in suits brought by them. *Riordan,* 756 F.Supp. at 736.

William David Frumkin, Sapir & Frumkin LLP, White Plains, NY, for Plaintiffs.

Owen Gorham Wallace, Epstein, Becker & Green, P.C., New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

I. Introduction

A. Procedural Background

Westchester Disabled on the Move, Inc. ("WDOMI"), Westchester Council of the Blind ("WCOB"), Westchester Independent Living Center, Inc. ("WILC"), Ivan Wyler, John Moynihan, Sherry Defrancesco and Joseph Defrancesco (collectively the

"Plaintiffs")[1] brought this action against the County of Westchester, Westchester County Board of Elections ("Board of Elections"), Reginald Lafayette, in his official capacity as Commissioner of the Board of Elections, and Carolee Sunderland, in her official capacity as Commissioner of the Board of Elections (collectively the "Defendants")[2] pursuant to Title II of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131–12134, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York State Election Law ("Election Law"), N.Y. Elec. § 4–104.

WDOMI, WILC and WCOB are not-for-profit organizations which, according to the Plaintiffs, provide diverse and far-reaching services to physically disabled and visually impaired individuals. These services include benefit and entitlement advertising, information and referral counseling, disabled student assistance, parent training, nursing home transition, employment advocacy, vocational and educational support and, of particular relevance to this case, efforts to guarantee that facilities operated by public entities are accessible to, and usable by, disabled individuals. Compl. ¶ 7.[3] Ivan Wyler, John Moynihan, Sherry Defrancesco and Joseph Defrancesco are disabled residents of New York State who have, in the past, cast their votes in Westchester County. See Compl. ¶¶ 9–12.

The Plaintiffs filed a motion for a preliminary injunction, specifically requesting that the Court (1) enjoin the Defendants from discriminating against the Plaintiffs with regard to their right to vote at Westchester County polling places during the upcoming Presidential Elections; (2) order Defendants to evaluate the accessibility of all polling places in Westchester County to disabled voters, and (3) order the Defendants to modify the polling places in Westchester County so that they are accessible to disabled voters on November 2, 2004. See Plaintiffs' PI Memo at 1. Defendants filed a motion to dismiss, requesting relief on three grounds: (1) by failing to name the New York State Board of Elections and the various local municipalities, the Plaintiffs have failed to join all necessary parties as required by Fed. R. Civ. P. 19; (2) only the four individual plaintiffs have standing, and therefore all claims other than those brought by these individuals (i.e. claims brought by the organizational plaintiffs) should be dismissed; (3) federal district courts have no standing to hear claims brought under § 4–104 of the Election Law. See Defendants' MTD Memo at 1–2.

B. Factual Background

According to the 2000 United States Census, there are approximately 900,000 residents in Westchester County, of whom approximately 50,000 suffer from physical disabilities. See Frumkin Aff. ¶ 2. The County is home to over 500,000 registered voters, and includes six cities and nineteen

1. Sherry Defrancesco and Joseph Defrancesco were named as plaintiffs in the complaint, but were not included among the plaintiffs moving for a preliminary injunction. However, the County Defendants' motion to dismiss seeks to dismiss their claims, along with those of the other plaintiffs.

2. Carol Berman, Neil W. Kelleher, Helena Moses Donahue, and Evelyn J. Acquila, Commissioners of Elections of the New York State Board of Elections, were also named as defendants in the complaint. They were not, however, included among the defendants moving to dismiss Plaintiffs' claims, nor does Plaintiffs' motion for a preliminary injunction seek to enjoin these individuals.

3. In this decision, citations to the Plaintiffs' complaint refer to the Plaintiffs' amended complaint, filed in May 2004.

towns, which are subdivided into 1021 election districts. *See* PALAZOLA AFF. ¶ 3. There are 440 polling places within the County borders. *See id.*

From 1999 through 2003, WDOMI and WILC conducted six surveys of the accessibility of the County's polling places to disabled voters. *See* FRUMKIN AFF. ¶ 3. A total of 109 polling places were surveyed in municipalities throughout the county, twenty-four of which were surveyed more than once. *See* TANZMAN AFF. ¶ 22. Using the Americans with Disabilities Act Accessibility Guidelines as their benchmark, WDOMI and WILC found that a majority of the polling places they surveyed were, to varying degrees, inaccessible. *See id.* Among the problems found were a lack of handicapped parking spaces, steep inclines leading from parking areas, doors that are difficult to open and inadequate signage. *See id.* at. ¶ 5. The polling places where Plaintiffs Ivan Wyler and John Moynihan intend to vote in the upcoming election were among those found to be inaccessible. *See* WYLER AFF. ¶ 6; MOYNIHAN AFF. ¶ 6. Defendants contend that these survey results are now dated, and do not accurately reflect the current status of polling places in the County. *See* DEPUTY COMMISSIONER'S AFF. ¶ 9 (indicating that local municipalities have certified as accessible, taken steps to improve, or requested a waiver for many of the polling places specifically mentioned in the Plaintiffs' claims).

New York law requires that each county's board of elections submit an annual report to the State Board of Elections setting forth: (a) the total number of polling places in the county;(b) the total number of such polling places having at least one entrance that provides access, by ramp or otherwise, to physically handicapped or elderly voters; and (c) the total number of such polling places for which the county board has waived the accessibility requirements of the Election Law. See 9 NYCCR § 6206.3. In 2003, the Board of Elections reported that 409 of the County's 441 polling places in existence at the time were accessible to the disabled. *See* FRUMKIN AFF. EXH. L. The Board of Elections found that, of the thirty-two inaccessible sites for which waivers had been given, eight had obstructed walkways or pathways to the entrance, thirty had unramped stairs or inaccessible elevators, but none had inadequate parking or barriers within voting areas. *See id.* The Board acknowledged that only 223 of the polling places had been physically surveyed, *id.*, although this appears to represent a larger sample than that forming the basis of WDOMI's and WILC's conclusions. Not surprisingly, Plaintiffs contest the accuracy of the Board of Elections' 2003 findings. *See* PLAINTIFFS' PI MEMO at 12–13.

In September 2002, the Westchester County Board of Legislators adopted a resolution acknowledging that "not all places designated by local municipalities provide adequate access to voters with disabilities" and that "not all such locations are compliant with the requirements of the Americans with Disabilities Act." *See* FRUMKIN AFF. EXH. H. The Board further resolved that all municipal governing bodies responsible for the selection of polling sites do so "in consultation with an independent living center," and limit their choices of polling places to sites that are "fully compliant with the Americans with Disabilities Act." *See id.* In May 2003, WDOMI and WILC wrote to Commissioners Lafayette and Sunderland, indicating that they would pursue litigation if they were not informed that polling places had been made accessible. *See* FRUMKIN AFF. EXH. K. After receiving no assurances from the Commissioners, *see* FRUMKIN AFF. ¶ 9, and believing, based on their surveys, that problems at Westchester County poll-

ing places persisted, Plaintiffs filed suit. *See* PLAINTIFFS' PI MEMO at 14.

## II. Analysis

### A. Applicable Standards

 Parties seeking a preliminary injunction must demonstrate (1) that they will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in their favor. *Forest City Daly Hous., Inc., v. Town of North Hempstead,* 175 F.3d 144, 149 (2d Cir. 1999). · An even more rigorous standard— requiring a "clear" or "substantial" showing of likelihood of success—applies where, as here, (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits. *Id.* at 149–50 (internal quotation marks omitted).

In considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court accepts as true all material factual allegations in the complaint and draws all reasonable inferences in favor of the nonmovant. *Still v. DeBuono,* 101 F.3d 888, 891 (2d Cir.1996). We may grant the motion only where it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *See id.* at 891. Many of Defendants' arguments in support of their motion to dismiss are also their arguments in opposition to Plaintiffs' motion for a preliminary injunction, and we therefore address these arguments within the framework of our preliminary injunction analysis.

### B. Irreparable Harm

The crux of the dispute over irreparable harm in this case is whether disabled voters who are unable to vote at their assigned locations are harmed if they are required to vote .by absentee ballot or in person at an alternative location. Plaintiffs argue that the ADA guarantees disabled voters the right to vote in a manner similar to non-disabled voters. *See* PLAINTIFF's PI REPLY at 2. Defendants argue that voters . are not irreparably harmed unless they are actually. disenfranchised. *See* DEFENDANTS' PI OPPOSITION at 11–12. In essence, therefore, the dispute over irreparable harm in this case is not so much over whether the harm to Plaintiffs would be irreparable, but rather whether they would be harmed at all.

 The court finds, contrary to Defendants' contention, that irreparable harm has occurred if disabled voters are required to vote at alternative locations or by absentee ballots. The court comes to this conclusion for several reasons. First, a disabled voter who arrived at an inaccessible polling place on Election Day may have great difficulty finding an accessible voting location in time. Disabled voters may not know before leaving home to vote which alternative locations would actually be accessible to voters with their specific disabilities[4] and, faced with the prospect of finding themselves at an inaccessible voting booth, may be dissuaded from attempting to vote at all. Further, in the absence of a comprehensive analysis of the accessibility of existing polling places, it is unclear whether.there are enough alternative polling places that are accessible

---

4. For such information to be available, ironically, some party would likely have to conduct the analysis of polling places that Plaintiffs are seeking in this case.

enough to provide a plausible option for disabled voters.

■ Absentee ballots are also an inadequate substitute for voting in person. For absentee voters to have their votes counted, they may have to vote well in advance of election day, thereby denying them as much time as other voters to consider their choice. And, as plaintiffs point out, N.Y. Election Law requires that voters intending to vote by absentee ballot be advised by their doctors that voting by absentee ballot is medically necessary, and obtaining statements to that effect from doctors may not be hassle free. N.Y. ELEC. LAW § 8–400(3)(c)(iii).

■ The ADA sets forth the standards of accessibility that must be met by various public entities and, as such, establishes the level of accessibility that disabled individuals can properly expect. Whether its requirements are met, therefore, provides an appropriate framework for determining whether, in a given case, disabled individuals seeking injunctive relief are at risk of suffering a harm that the law recognizes. The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) (2000). In particular, it requires that otherwise qualified handicapped individuals be provided with "meaningful access" to the program or services sought. *See Henrietta D. v.*

*Bloomberg,* 331 F.3d 261, 283 (2d Cir.2003) citing *Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Failing to ensure that disabled individuals are able to vote in person and at their assigned polling places—presumably the most commonly used method of voting—could not reasonably be construed as consistent with providing "meaningful access" to the voting process, particularly where the alternatives relied upon by the Defendants impose additional costs, risks and inconveniences on disabled voters not faced by others.[5] Therefore, the inability to vote at assigned voting locations on Election Day constitutes irreparable harm.

## C. Substantial Likelihood of Success

Defendants make three arguments that Plaintiffs have no clear likelihood of success in this case. First, they argue that the plaintiffs have failed to join indispensable parties to the litigation. Second, they claim that many of the plaintiffs lack standing to bring the claims at issue in this case. Third, they assert that Plaintiffs' claims are based on an erroneous interpretation of the A.D.A.

Rule 19(a) of the Federal Rules of Civil Procedure requires that all necessary parties be joined, provided they are subject to service and their presence will not deprive the court of jurisdiction. FED R. CIV. P. 19(a). A party is deemed necessary if (1) in the person's absence complete relief cannot be accorded among those already

---

5. It is important to note that many cases addressing the issue of access to voting facilities have not found that the ability to vote at alternative locations or by absentee ballot mitigates harm in this context. *See People of the State of New York v. County of Delaware,* 82 F.Supp.2d 12, 16–17 (N.D.N.Y.2000) (finding irreparable harm, without addressing absentee ballots or voting at alternative locations, where a sizeable portion of the voting population may "be presented with unnecessary difficulties if the polling places they seek to use are truly inaccessible"). Although the court in *Nat'l Org, on Disability v. Tartaglione* was not specifically addressing the irreparable harm element of a preliminary injunction action, it is instructive to note that it too rejected the argument that the availability of absentee ballots or alternative locations required dismissal of an action brought pursuant to the A.D.A. 2001 WL 1231717, at *3–4 (E.D.Pa. Oct. 11, 2001), 2001 U.S. Dist. LEXIS 16731, at *13.

parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. *Id.* If a person as described in subdivision (a)(1)-(2) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. FED. R. CIV. P. 19(b). In making this determination, the court may consider several factors, including whether a judgment rendered in the person's absence will be adequate. *See id.*

 The currently named Defendants could not provide complete relief sought by Plaintiffs in this case. In their complaint, Plaintiffs clearly request an injunction ordering Defendants to take all steps necessary to ensure that all voting locations in Westchester County are fully compliant with the requirements of the A.D.A. on Election Day. *See* COMPL. ¶¶ D, E. Specifically, Plaintiffs request injunctive relief necessary "to ensure that the polling places in Westchester County are accessible to physically-disabled and visually-impaired individuals, including providing training for workers at polling places in Westchester County" and "ensur[ing] that the voting machines in Westchester County are independently-usable by visually-impaired individuals. . . ." *See id.*

First, with respect to polling places, New York law requires that municipalities submit to the Board of Elections, a list of the polling places in each election district in which. . . any election may be held." *See* N.Y. ELEC. LAW § 4–104(1). As Plaintiffs rightly point out, the county Board of Elections is empowered to select an alternative polling place should it determine that a polling place designated by a municipality is "unsuitable or unsafe." *Id.* But even if the Board of Elections could disapprove polling places designated for this year's election, it is entirely unclear that its power to merely *designate* suitable polling places would be adequate to ensure that all polling places used in the upcoming election actually conform with the ADA, even if the Board of Elections were to use ADA requirements as guidelines for its choices.

In their motion papers, Plaintiffs have detailed a long, and likely not exhaustive, list of changes that would have to be made in order to bring the various polling places in Westchester County in full compliance with the ADA. In particular, Plaintiffs note the need for designated handicapped-parking spaces with adequate space and aboveground signage, pathways without excessively steep slopes and having firm level surfaces and curb ramps where walkways meet roadways, entrances with no changes in elevation greater than 1/4 inch, ramps with handrails and landings, entrances with openings wide enough to allow wheelchairs to pass through, door handles that are easy to open, and buildings with interiors with non-slip surfaces. *See* PLAINTIFF'S PI MEMO at 4. Unless facilities meeting all these requirements currently exist all over the County, which seems unlikely,[6] an order from this court requiring the County to choose facilities that meet these requirements is of little use. Rather, it is likely the case that substantial changes and mod-

---

**6.** If such facilities did exist all over the County, it would become even more difficult to understand why they were not chosen in the first place.

ifications to existing facilities would have to be made, and such changes would be difficult, if not impossible, to make without the cooperation of municipalities, which likely own or otherwise control many of the actual or potential polling places in the County. *See People of New York ex rel. Spitzer v. County of Delaware*, 82 F.Supp.2d 12, 15 (N.D.N.Y.2000) (the argument that townships are responsible for maintaining polling sites is valid).[7]

With respect to voting machines, New York law empowers Westchester County only to approve purchases of voting machines by local municipalities. *See* N.Y. Elec. Law §§ 7–200, 7–203. This court could order Defendants to approve voting machines that conform to the ADA were they to be purchased and submitted for county approval, but the court cannot order them to purchase them for the voting districts in the county. As such, it cannot order them to "ensure" that such machines are available, installed, and used on Election Day.

Although this court has little doubt that the named defendants in this case could, if they were genuinely committed, make progress toward providing the relief sought by Plaintiffs, they could not accord complete relief in this case. Therefore, Plaintiffs cannot establish a likelihood of success on the merits, and Plaintiffs' mo-

tion for a preliminary injunction is DENIED. Furthermore, having found that a judgment issued in the absence of the municipalities would be inadequate, Defendants' motion to dismiss is GRANTED.[8]

It is so ordered.

---

7. It is admittedly the case that the court in *County of Delaware* did not appear to be as concerned as this court about the propriety of granting injunctive relief such as that sought here without towns or municipalities involved in the case. *See* 82 F.Supp.2d at 15 (finding that County defendants were proper parties). Nevertheless, the court in *County of Delaware* was clearly aware of the possibility that "as defendants do not exercise physical control over the polling places it may be difficult for them to insure compliance with this Order." *Id.* at 18. Moreover, it is worth noting the same court's later finding that the Counties' cooperation with its order had been "embarrassingly shameful," *see People by Spitzer v.*

*County of Delaware*, 2000 WL 1264302, at *1 (N.D.N.Y. August 16, 2000), 2000 U.S. Dist. LEXIS 12595, at *4, although the extent to which this non-cooperation was the result of inadequate cooperation with municipalities is admittedly unclear from the court's later opinion.

8. Given this finding with respect to Rule 19, this court need not address Defendants' arguments regarding standing or the appropriateness of Plaintiffs' claims under the New York Election Law or the New York Human Rights Law.